UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**UNITED STATES OF AMERICA**          **CASE NO.  6:19-CR-00282-01**

**VERSUS**                              **JUDGE SUMMERHAYS**

**ADRIAN DANOS (01)**                 **MAGISTRATE JUDGE HANNA**

### REPORT AND RECOMMENDATION

Before the Court is Defendant's Motion to Suppress. (Rec. Doc. 27). The Government opposed the Motion (Rec. Doc. 31), and Defendant replied (Rec. Doc. 32). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.  Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that Defendant's Motion be denied.

### Factual Background

Defendant was indicted on September 18, 2019 with three counts related to receiving and possessing child pornography. (Rec. Doc. 1). He was arraigned on October 9, 2019 (Rec. Doc. 9). He filed the Motion to Suppress at issue on December 20, 2019.

On March 28, 2019, Special Agent Scott Woodrow with Homeland Security Investigations presented an Affidavit for Search Warrant to Magistrate Judge

Whitehurst for the search of Defendant's residence at 219 Lyons Street. (Rec. Doc. 31-1). In addition to SA Woodrow's qualifications and training relative to investigating child pornography offenses, the affidavit states the following pertinent facts:

- On January 31, 2019, the Louisiana Bureau of Investigation Cyber Crime Unit received a tip from the National Center for Missing and Exploited Children (NCMEC) that a Dropbox user, "donkeykick237@gmail.com, Adrian Danos," uploaded images/videos of child sexual abuse and related material on January 1, 2019. (Rec. Doc. 31-1, ¶8).

- The account had been accessed "by the suspect" on November 29, 2018 using an IP address owned by Cox Communications. (Rec. Doc. 31-1, ¶7).

- A subpoena duces tecum issued to Cox regarding the IP address revealed that the registered user of the IP address was James Benoit at 303 3rd Street, Youngsville, Louisiana. (Rec. Doc. 31-1, ¶8).

- An open source search on February 21, 2019 revealed an Adrian Danos on Facebook who resided in Lafayette. Further investigation on the

Thinkstream Deluxe database[1] revealed a driver's license image of an Adrian Danos depicting a white male with two defined moles on the right side of his face by his mouth and an address of 219 Lyons Street in Lafayette. This Thinkstream driver's license image matched the Facebook profile picture of the Adrian Danos in Lafayette. (Rec. Doc. 31-1, ¶10).

- A Google search warrant return for the email address donkeykick237@gmail.com revealed login IP addresses, access device logs, and a telephone number, as well as the contents of emails to Adrian Danos. One email was an Amazon order confirmation dated January 1, 2019 (i.e. the same date on which the images in question were allegedly uploaded) In the images folder were numerous images of an individual which appeared to be the same person as the Facebook Adrian Danos. (Rec. Doc. 31-1, ¶13).

- Surveillance conducted at 219 Lyons Street and additional research revealed a car at the residence registered to Kara Danos Urban and in which Adrian Danos had received a speeding ticket in October 2017. (Rec. Doc. 31-1, ¶14-15).

---

[1] Thinkstream appears to be a research tool available only to law enforcement. See one witness's explanation at *Skinner v. Fewell*, No. CIV A 07-1096, 2009 WL 2222714, at *2 (W.D. La. July 22, 2009).

- An US Postal Service Inspector advised that mail had been delivered to Adrian Danos at 219 Lyons Street. (Rec. Doc. 31-1, ¶17).

The affidavit goes on to detail how personal computer technology and virtual networks are used by suspects to share and store child pornography and to interact with each other, such as by the creation of peer-to-peer networks. (Rec. Doc. 31-1, ¶18-33).

The sole basis of Defendant's Motion is that the affidavit for the search warrant for his residence at 219 Lyons Street was insufficient, because it did not link the Dropbox account to the 219 Lyons Street address, other than through the name, "Adrian Danos."

## Law and Analysis

Defendant's Motion to Suppress invokes the exclusionary rule, as it seeks to preclude the Government from introducing at trial evidence obtained during a search of his residence. "The exclusionary rule was created by the Supreme Court to 'supplement the bare text' of the Fourth Amendment, which 'protects the right to be free from 'unreasonable searches and seizures,' but ... is silent about how this right is to be enforced.'" *United States v. Ganzer*, 922 F.3d 579, 584 (5th Cir.), *cert. denied,* 140 S. Ct. 276 (2019), citing *Davis v. United States*, 564 U.S. 229, 231 (2011). The exclusionary rule operates to exclude the prosecution from introducing evidence obtained unconstitutionally. *Id*. Its purpose is to deter officer misconduct,

4

not to redress injury to the victim of a constitutional violation or to address judicial errors or misconduct. *Id.*, citing *Davis v. United States*, 564 U.S. 229, 236-37 (2011), and *United States v. Leon*, 468 U.S. 897, 916 (1984). Generally, "the defendant has the burden of proving, by a preponderance of the evidence, that the material in question was seized in violation of his constitutional rights." *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993).

Search warrants must be based on probable cause. "The information necessary to show probable cause must be contained within a written affidavit given under oath." *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007), citing *United States v. Brown,* 941 F.2d 1300, 1302 (5th Cir.1991). "Probable cause does not require proof beyond a reasonable doubt; a magistrate need only have a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Id*.

The Supreme Court has recognized a good faith exception to the exclusionary rule, which allows admission at trial of "evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate" but later invalidated. *Id.* citing *Leon*. If the good faith exception applies, the court need not address the issue of probable cause. *United States v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018).

Valid warrants are often contrasted to those supported by mere "bare bones" affidavits, which "contain wholly conclusory statements, [and] lack the facts and

circumstances from which a magistrate can independently determine probable cause." *United States v. Massi*, 761 F.3d 512, 530 (5th Cir. 2014), citing *United States v. Satterwhite,* 980 F.2d 317, 321 (5th Cir.1992)."When a warrant is supported by more than a 'bare bones' affidavit, officers may rely in good faith on the warrant's validity." *Id*. Further, the Fifth Circuit has identified four situations in which the good faith exception does not apply:

> (1) when the issuing magistrate was misled by information in an affidavit that the affiant knew or reasonably should have known was false;
> (2) when the issuing magistrate wholly abandoned his judicial role;
> (3) when the warrant affidavit is so lacking in indicia of probable cause as to render official belief in its existence unreasonable;
> (4) when the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that executing officers cannot reasonably presume it to be valid.

*Id*., quoting *United States v. Woerner*, 709 F.3d 527, 533–34 (5th Cir. 2013).

Defendant contends that the good faith exception does not apply under the third category, arguing that the affidavit lacked a nexus between the Dropbox account and the 219 Lyons Street address, other than the name, "Adrian Danos." (Rec. Doc. 25-4). The Court disagrees. "Facts in the affidavit must establish a nexus between the house to be searched and the evidence sought." *United States v. Payne*, 341 F.3d 393, 400 (5th Cir. 2003), citing *United States v. Freeman,* 685 F.2d 942,

6

949 (5th Cir.1982). "The nexus may be established through direct observation or through 'normal inferences as to where the articles sought would be located.'" *Id.*

SA Woodrow's eighteen-page affidavit, which contains detailed facts regarding his observations and research related to the donkeykick237@gmail.com address, is far from "bare bones." The affirmations explain how a tip from the NCMEC advised that the user of the said email address uploaded images of child pornography.[2] (Rec. Doc. 31-1, ¶6). The affidavit states that the Dropbox account linked to the said email address "was accessed by the suspect" (i.e. Adrian Danos) using the IP address later identified as owned by James Benoit.[3] (Rec. Doc. 31-1, ¶7 – 8). SA Woodrow further attested that additional investigation and research revealed that the email address was linked to an Adrian Danos who resided at 219

---

[2] The Second Circuit described NCMEC's obligation to provide tips regarding suspected child pornography as follows: "NCMEC is a private, nonprofit corporation, which aims to reunite families with missing children, reduce child sexual exploitation, and prevent the victimization of children. It maintains an initiative whereby individual persons and ISPs can report to NCMEC on a range of internet-based misconduct, including the apparent presence of child pornography. ISPs that "obtain[ ] actual knowledge" of unlawful conduct involving child pornography are required by § 2258A of Title 18 of the United States Code to report that conduct to NCMEC, 18 U.S.C. § 2258A(a), and they face substantial fines if they fail to do so, *see id*. § 2258A(e). However, the statute provides that "[n]othing in this section shall be construed to require a[n ISP] ... to ... monitor any user," to monitor the "content of any [user] communication," or to "affirmatively seek facts or circumstances" involving child pornography violations, *id*. § 2258A(f). Once child pornography conduct has been reported to NCMEC, NCMEC is required to "forward" any such report to law enforcement. *Id*. § 2258A(c)(1)." *United States v. DiTomasso*, 932 F.3d 58, 61 (2d Cir. 2019)

[3] Dropbox is "an internet file-sharing service that allows users to store files in online data centers and allows anyone to access them on any computer by signing into the user's account with the user's password." *DiTomasso*, 932 F.3d at 61.

7

Lyons Street, because images of an Adrian Danos in Lafayette found on Facebook matched images of the Adrian Danos found in the email folders of donkeykick237@gmail.com and on the driver's license of the Adrian Danos residing at 219 Lyons Street in Lafayette. (Rec. Doc. 31-1, ¶10; 13). Further, an Amazon order confirmation sent to the email address on January 1, 2019 supported the likelihood that the Adrian Danos in question had in fact used the computer on the date the images were alleged to have been uploaded. (Rec. Doc. 31-1, ¶13). SA Woodrow attested how computer technology has revolutionized child pornography, and that computer equipment and peripherals and other identified items, which could be found at the suspect's residence, would reveal evidence of child pornography after specialized examination. (Rec. Doc. 31-1, p. 6-18). The Court finds that the affidavit contains sufficient facts showing a nexus between 219 Lyons Street where Adrian Danos apparently resided and the computers and related equipment to be searched in relation to child pornography. The facts supporting the affidavit—that the Adrian Danos pictured in the emails of donkeykick237@gmail (linked to the Dropbox account) appeared to be the same male as the Facebook Adrian Danos living in Lafayette and the Thinkstream Adrian Danos who resided at 219 Lyons Street in Lafayette—constituted a substantial basis for concluding that a search of 219 Lyons Street would uncover personal computer devices which would contain

evidence of wrongdoing. Hence, the search warrant was not invalid, and the search was constitutional.

The Government cited *United States v. Robinson,* 741 F.3d 588 (5th Cir. 2014) as an exemplary case. In *Robinson*, a similar child pornography case, law enforcement submitted affidavits in support of search warrants for Defendant's place of work (Accurate Roofing) and residence. The affidavit provided that the IP address for Accurate Roofing had been accessed by a user, "lowkey" (identified as Robinson), that the victim had been identified as Robinson's son, and that public records had revealed his residential address. *Id.* at 596. The defendant argued that the affidavit lacked key facts establishing a nexus to search his residence, because it failed to establish that the residence would contain evidence of child pornography images dated two years earlier, and because the affidavit failed to establish that Robinson and his son still lived there. *Id.* at 597. In rejecting the defendant's argument and denying his motion to suppress, the Fifth Circuit held that "normal inferences" could be drawn that evidence of child pornography (such as visible household items, clothing, and cameras) could be in the defendant's residence even if he had moved since the offense. *Id.* Thus, a sufficient nexus existed between the offense and the defendant's residence.

Defendant herein attempts to distinguish *Robinson* on the facts that other evidence linked Robinson to the places to be searched, such as the fact that the victim

9

was his son and that his account could be linked to his work IP address. (Rec. Doc. 32, p. 4). Defendant frames SA Woodrow's affidavit in this case as "a hunch." *Id*. The Court disagrees. Normal inferences can be drawn from the facts set forth in SA Woodrow's affidavit indicating that Defendant Adrian Danos, who resided at 219 Lyons Street, was likely the same Adrian Danos of the donkeykick237@gmail.com Dropbox account, and that evidence of child pornography could be found in his residence, where people often keep devices capable of uploading images. Accordingly, the search warrant was valid, and the search of Defendant's residence was constitutional.

## Conclusion

For the reasons discussed herein, it is recommended that Defendant's Motion to Suppress (Rec. Doc. 27) be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Crim. P. 59(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within

fourteen days following the date of its service, or within the time frame authorized by Fed. R. Crim. P. 59(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

    THUS DONE in Chambers, Lafayette, Louisiana on this 23rd day of January, 2020.

                                                                                _____
                                                                                PATRICK J. HANNA
                                                                                UNITED STATES MAGISTRATE JUDGE